aEE

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LEWANDA HAMILTON and FELICIA WRIGHT, | ) ) ) |
| Plaintiffs, | ) ) No. 09 C 1252 |
| v. | ) ) The Honorable William J. Hibbler |
| GROUP O, INC., | ) ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiffs bring this suit against their former employer, Group O, alleging violations of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e. Both plaintiffs claim Group O unlawfully terminated them in retaliation for engaging in protected conduct. Plaintiff Hamilton also claims that her termination constituted sex discrimination and sets forth a hostile work environment claim. Defendant now moves for summary judgment on Hamilton's claims. For the reasons set forth below, the Court DENIES Defendant's motion.

### I. Factual Background

The following relevant facts are undisputed, unless otherwise specified.

Group O is a supply chain provider of services for Caterpillar at Caterpillar's Joliet and Aurora plants, providing manpower services for Caterpillar's storerooms and docks. (Def. Rule 56.1(a)(3) Statement (hereinafter "Def. St.") ¶ 1.) Lewanda Hamilton was employed as a receiving clerk by Group O at all relevant times. (Def. St. ¶ 8.)

Group O claims that Hamilton was written up on an employee warning notice on September 26, 2006 by her supervisor Mark Clark, Jr., for creating a hostile working

1

environment after she insulted another supervisor. (Def. St. ¶¶ 11-12.) The company has produced a copy of an employee warning notice dated September 26, 2006 that refers to an incident that took place on August 16, 2006. (Def. St. Ex. F at Ex. 9.) The form indicates that Hamilton refused to sign the form in order to acknowledge that she read and understood it. (Def. St. Ex. F at Ex. 9.) The form also indicates that if Hamilton were involved in another incident she could be suspended or dismissed. (Def. St. Ex. F at Ex. 9.) However, Hamilton denies that she ever received such a form or any indication that she was being disciplined prior to her termination. (Pl. Resp. to Def. St. (hereinafter "Pl. Resp.") ¶¶ 11-12; Pl. Rule 56.1(b)(3)(C) Statement of Add'l Facts (hereinafter "Pl. St.") ¶ 23.) She also denies that she created a hostile working environment or insulted her supervisor. (Pl. Resp. ¶¶ 11-12.)

On October 23, 2006, while Hamilton was sitting at her desk doing work, her co-corker, Jeremy Hicks, approached her and pulled something that looked like a penis out of the crotch of his pants and rubbed it across her left cheek and lips. (Pl. St. ¶¶ 1-2.) Then, he ran away. (Pl. St. ¶ 3.) Afterwards, Hicks claims she complained to four separate Group O employees, including co-worker Wilburt Chrystler, supervisor Mark Clark, Jr., human resources manager Michael Saltzman, and manager Robert Dillon. (Pl. St. ¶¶ 11-13.) Group O denies this. (Def. Resp. to Pl. St. (hereinafter "Def. Resp.") ¶¶ 11-13.) Group O notes that Hamilton never filled out a conversation form about the incident. (Def. St. ¶ 21.) However, Hamilton claims that she had asked for a conversation form in the past, but had not been provided one, and that she was never offered a form after reporting this incident. (Pl. Resp. ¶ 21.) In fact, she claims that after complaining to Clark a second time, he laughed and walked away. (Pl. St. ¶ 17.) Group O did not conduct any investigation into the incident nor discipline Hicks for the incident. (Pl. St. ¶¶ 19-20.)

Hamilton would see Hicks eight to ten times per day at work. (Pl. St. ¶ 7.) After the incident on October 23, she had to go out of her way to ensure that she was never alone with him. (Pl. St. ¶ 7.)

On October 26, 2006, Hamilton told Hicks to unload a truck that pulled up. (Def. St. ¶ 31.) Hamilton claims that Hicks refused to unload the truck and that she had to find someone else to do it as a result. (Pl. Resp. ¶¶ 30-31.) Hicks claims that Hamilton cursed at him a number of times. (Def. St. ¶ 32.) Hamilton denies this. (Pl. Resp. ¶ 32.) Hicks completed a conversation form complaining of the incident. (Def. St. ¶ 33.) Idrenna Mann, a co-worker, claims to have witnessed the incident, and completed a conversation form corroborating Hicks's version of the facts. (Def. St. ¶ 36.) Mann and Hicks filled out the forms at the instruction of Mark Clark, Jr. (Def. St. ¶ 39.) Clark then discussed the incident with Group O's operations manager, Bob McGee. (Def. St. ¶ 41.) McGee told Clark to terminate Hamilton.[1] (Def. St. ¶ 42.) McGee then completed a separation notice stating that Hamilton was terminated for creating a hostile work environment. (Def. St. ¶ 43.)

Hicks and Clark are cousins. (Pl. St. ¶ 5.) Hamilton claims that Hicks would brag to her that because of this relationship, he did not have to do any work and could get anybody fired. (Pl. St. ¶ 6.) Group O denies this. (Def. Resp. ¶ 6.)

## II. Standard of review

Summary judgment is appropriate when the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact

---

[1] Hamilton denies that McGee made the decision to terminate her, arguing that it was actually Clark's decision. (Pl. Resp. ¶ 42.) She bases her denial on Group O's answer to an interrogatory, which states that Clark made the decision, which was approved by McGee. While Group O did make that assertion in its interrogatory response, it has since amended that response on the basis of evidence uncovered during the course of discovery. Hamilton is unable to point to any evidence contradicting Group O's change in position and the Court sees no reason to penalize Group O for amending its answer when it became aware of the fact that it was incorrect.

3

and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating there is no genuine issue of material fact, and judgment as a matter of law should be granted in their favor. *Id.* Once the moving party has met the initial burden, the non-moving party must offer more than a mere scintilla of evidence to survive summary judgment. *Roger Whitmore's Auto. Servs. v. Lake County, Ill.*, 424 F.3d 659, 667 (7th Cir. 2005). The non-moving party must produce specific facts showing there is a genuine issue of material fact, and that the moving party is not entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Finally, all evidence and inferences must be viewed in the light most favorable to the non-moving party. *Id.* at 255.

### III. Analysis

#### A. Sexual harassment

Hamilton's first claim is for sexual harassment. She bases her claim on Hicks's actions in rubbing a fake penis across her face at work. Group O argues that it is entitled to summary judgment on this claim because this isolated incident does not constitute actionable sexual harassment because it is not "sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment." *See Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67, 106 S. Ct. 2399, 2405, 91 L. Ed. 2d 49 (1986) (internal quotation omitted). Given that this is an isolated incident, Hamilton is not arguing that the harassment was especially pervasive, only that Hicks's behavior was sufficiently severe so as to render it actionable.

In order to determine whether Hamilton is correct, the Court must take into account a number of factors, including "the frequency of the discriminatory conduct; its severity; whether

it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88, 118 S. Ct. 2275, 2283, 141 L. Ed. 2d 662 (1998) (internal quotation omitted). In conducting this examination, the Court is to ensure that Title VII does not become a "general civility code," but instead prohibits only conduct which is both objectively and subjectively offensive. *Id.* at 787-88, 118 S. Ct. 2283-84.

Group O contends that in pulling a fake penis from the crotch of his pants and rubbing it across Hamilton's mouth and cheek, Hicks's conduct was "perhaps childish or unprofessional," but was nothing more than "one tepid encounter" consisting of "only silly, inappropriate conduct in a factory setting with hourly workers engaging in some horseplay."[2] The company then points to a couple of cases that it believes are analogous where the Seventh Circuit found the objectionable conduct to be insufficient to support a claim. In *Adusumilli v. City of Chicago*, 164 F.3d 353, 361-62 (7th Cir. 1998), the plaintiff complained that her co-workers made ambiguous teasing remarks about bananas, stared at her, attempted to make eye contact with her, briefly touched her on the arms and fingers, and that one co-worker may have once poked her buttocks. The court found "the most salient feature" of the harassment to be its "lack of severity," and noted that the "most serious conduct, the unwanted touching of [her] buttocks, took the relatively mild form of a poke and occurred only once." *Id.* For these reasons, the court upheld the district court's grant of summary judgment to the defendant. *Id.* In *McPherson v. City of Waukegan*, 379 F.3d 430, 438-39 (7th Cir. 2004), the court relied on *Adusumilli* and similarly concluded that plaintiff was not the victim of sexual harassment when her co-worker asked her what color her

---

[2] The Court is perplexed by Group O's reference to the fact that the incident took place in a "factory setting" between "hourly workers." The company provides no case law or reasoning suggesting that these facts are relevant. Thus, the Court disregards them.

5

bra was, used a suggestive tone when asking whether he could "make a house call," and pulled back her tank top with his fingers.

The Court finds Group O's argument unpersuasive. While surprising Hamilton by pulling a fake penis out of his crotch and rubbing it across her face may not have been the most offensive conduct Hicks could have engaged in, it was also far more than the "innocuous" or "merely vulgar and mildly offensive" conduct that the Seventh Circuit has found insufficient to state a claim under Title VII. *See Dicenso v. Cisneros*, 96 F.3d 1004, 1008 (7th Cir. 1996); *Baskerville v. Culligan Intern. Co.*, 50 F.3d 428, 431 (7th Cir. 1995). Despite Group O's attempts, the conduct cannot be explained away as typical horseplay that employees can expect to endure at the workplace. The Seventh Circuit has recognized that "direct contact with an intimate body part constitutes one of the most severe forms of sexual harassment." *Worth v. Tyer*, 276 F.3d 249, 268 (7th Cir. 2001). Here, Hicks did not force Hamilton into direct contact with his intimate body part, but he surprised her by imitating such conduct in a way that a reasonable person might find very offensive. Given the frequency with which Hamilton had to interact with Hicks every day, the prospect of dealing with this sort of conduct may have been enough to alter the conditions of Hamilton's employment. It is at least severe enough to warrant allowing the case to go to a jury. The Court therefore denies Group O's motion concerning Hamilton's claim of sexual harassment.

## B. Sex discrimination

Hamilton also claims that she was the result of sex discrimination. She may prove her claims by one of two methods, commonly known as the direct and indirect methods. *Lucas v. Chicago Transit Auth.*, 367 F.3d 714, 728 (7th Cir. 2004). Hamilton chooses to proceed under the indirect, burden-shifting method established in *McDonnell Douglas Corp. v. Green*, 411 U.S.

792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). A plaintiff pursuing the indirect method must first set forth a *prima facie* case of discrimination by providing evidence that: (1) she is a member of a protected class; (2) she was performing her job satisfactorily; (3) she suffered an adverse employment action; and (4) the employer treated similarly-situated employees outside of the protected class more favorably. *Lucas*, 367 F.3d at 728. If Hamilton meets this initial burden, then the burden shifts to Group O to articulate a legitimate non-discriminatory reason for taking the adverse action. *Id.* Then, the burden shifts back to Hamilton to demonstrate that the reason offered is pretext for discrimination. *Id.*

Here, Hamilton, as a woman, is clearly a member of a protected class. It is also undisputed that she suffered an adverse employment action as she was fired. Group O claims that she is unable to establish the second and fourth prongs of her *prima facie* case, however.

Given the facts of this case, these two prongs are conflated somewhat with one another, as well as with the question of whether Group O's stated reason for firing Hamilton (her alleged misconduct towards Hicks and others) is pretext. In cases where a plaintiff claims she is the subject of disparate punishment, the second and fourth prongs of the *prima facie* case merge because the plaintiff may argue that regardless of whether she failed to satisfactorily perform her duties, she was treated differently than others who acted similarly. *Lucas*, 367 F.3d at 728. For instance, Hamilton notes that she leveled a complaint against Hicks that he had created a hostile working environment for her, just as he had complained about her, but that he was not disciplined as a result of her complaint. The question of whether Hamilton was meeting Group O's expectations regarding the performance of her job also merges with the question of whether Group O's reason for firing her is pretext because if Group O is lying about Hamilton's alleged

7

hostile conduct, then its reason for firing her would be false. *See Peirick v. Ind. Univ.-Purdue Univ. Indianapolis Athletics*, 510 F.3d 681, 687-88 (7th Cir. 2007).

Group O notes that Hamilton's burden regarding these conflated elements weighs heavy given that Clark was not the ultimate decision-maker. Instead, McGee decided to terminate Hamilton. It appears that McGee only received a report of Hamilton's alleged misconduct (on two occasions), and never received a report of Hicks's misconduct. Thus, Group O argues, as far as the company was concerned, Hamilton had misbehaved and Hicks had not, and the company therefore terminated Hamilton for a legitimate reason that had nothing to do with sex discrimination.

Hamilton argues, however, that regardless of the level of McGee's knowledge, her termination was motivated by discriminatory animus that may be attributed to Group O. She notes that, according to her version of the facts, which the Court must take as true, Clark withheld information from McGee about Hamilton's complaint and reported false information regarding Hamilton's misconduct. Thus, whether McGee realized it or not, Hamilton argues that he acted on the basis of information that had been reported in a discriminatory manner.

The Seventh Circuit has held that under some circumstances where an employee "without formal authority to materially alter the terms and conditions of a plaintiff's employment," such as Clark, "nonetheless uses [his] 'singular influence' over an employee who does have such power," such as McGee, "to harm the plaintiff for [impermissibly discriminatory] reasons, the actions of the employee without formal authority are imputed to the employer and the employer is in violation of Title VII." *Brewer v. Bd. of Trustees of Univ. of Ill.*, 479 F.3d 908, 917 (7th Cir. 2007). "In some situations, the influence can be exercised by supplying misinformation or failing to provide relevant information to the person making the employment decision." *Id.* In

order to succeed, Hamilton must prove that Clark had so much influence over the decision as to "basically be...the true functional decision-maker." *Id.* (internal quotations, ellipses, and brackets omitted). Thus, if Group O could show that McGee was not wholly dependent on the information supplied or withheld by Clark because McGee conducted an independent investigation into the facts, the company might avoid liability. *Id.* at 918. But, Group O has not provided any evidence that McGee conducted such an investigation. In addition to these facts, Hamilton notes that Clark and Hicks were cousins and Hicks claimed that he had some influence over hiring decisions through Clark.

Given these facts, the Court finds that there are genuine disputes as to whether Hamilton was performing her job adequately, whether Hicks and Hamilton were similarly situated, and whether Group O's decision to terminate Hamilton was improperly infected with discriminatory animus unrelated to any failure to meet expectations. The Court therefore denies Group O's motion as it relates to Hamilton's claim of sex discrimination.

### C. Retaliation

Finally, the Court must address Hamilton's claim of retaliation. Hamilton may also prove this claim through either the indirect or direct method. *Poer v. Astrue*, 606 F.3d 433, 439 (7th Cir. 2010). In her response to Group O's motion, Hamilton pursues only the direct method. Under the direct method, "a plaintiff must show through either direct or circumstantial evidence that (1) she engaged in statutorily protected activity; (2) she suffered an adverse action taken by the employer; and (3) there was a causal connection between the two." *Id.* (internal quotation omitted). Here, Hamilton claims that she engaged in protected activity when she complained of the incident with Hicks. She clearly suffered an adverse action when she was fired. Thus, the

question for the Court is whether Hamilton can establish a genuine to dispute as to whether there was a causal connection between the two.

Hamilton relies entirely on circumstantial evidence in making her case. The Seventh Circuit has identified three types of circumstantial evidence that are normally relied upon by plaintiffs in Title VII cases. First, a plaintiff may point to suspicious timing, behaviors, or statements from which a jury might draw an inference of discriminatory intent. *Troupe v. May Dept. Stores Co.*, 20 F.3d 734, 736 (7th Cir. 1994). Second, a plaintiff may point to evidence that similarly-situated employees who did not engage in protected activity received systematically better treatment than the plaintiff. *Id.* Finally, a plaintiff may point to evidence that the employer's stated reason for taking the adverse action in question was merely pretext for discrimination. *Id.*

Hamilton argues that the timing of her termination was suspicious and that Group O's reason for firing her is pretext. As Hamilton was fired just one week after she says she complained of Hicks's harassment, she is right on the first point. Moreover, as discussed above, Hamilton has set forth a reasonable argument that Group O's reason for firing her is pretext. The theory that Clark's motives can be imputed to the company apply to Hamilton's claims of retaliation as well. *See Poer*, 606 F.3d at 438 (noting that it is appropriate to impute a supervisor's retaliatory motive to a company if the supervisor "significantly influenced the employer's decision" by withholding information or providing false information). These two types of circumstantial evidence are enough to create a genuine dispute as to whether Group O was retaliating against Hamilton. Thus, the Court denies Group O's summary judgment motion regarding her final claim as well.

## CONCLUSION

For the above reasons, the Court DENIES Defendant's motion for summary judgment.

IT IS SO ORDERED.

__3/23/11__
Dated

__Wm. J. Hibbler__
Hon. William J. Hibbler
United States District Court