

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LEWANDA HAMILTON and FELICIA WRIGHT, ) ) ) | |
| Plaintiffs, ) ) | No. 09 C 1252 |
| v. ) ) | The Honorable William J. Hibbler |
| GROUP O, INC., ) ) | |
| Defendant. ) | |

# MEMORANDUM OPINION AND ORDER

Plaintiffs bring this suit against their former employer, Group O, alleging violations of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e. Both plaintiffs claim Group O unlawfully terminated them in retaliation for engaging in protected conduct. Defendant now moves for summary judgment on Wright's claim. For the reasons set forth below, the Court denies Defendant's motion.

## I. Factual Background

The following relevant facts are undisputed, unless otherwise specified.

Group O is a supply chain provider of services for Caterpillar at Caterpillar's Joliet and Aurora plants, providing manpower services for Caterpillar's storerooms and docks. (Def. Rule 56.1(a)(3) Statement (hereinafter "Def. St.") ¶ 1.) As of July 2008, Wright was employed as an hourly paid clerk on second shift and was supervised by Alfredo Souza. (Def. St. ¶ 8.)

In June 2008, Wright had a photographer create invitations to her birthday party, which was to take place on July 19th of that year. (Def. St. ¶¶ 10-13.) The invitations contained pictures of Wright in sexually provocative poses. (Def. St. ¶ 11.) In July, Wright distributed the

1

invitations to two retail establishments where they were available to the public. (Def. St. ¶¶ 14-15.) The establishments were within 15 to 25 minutes of the Caterpillar plant where Wright worked. (Pl. Resp. to Def. St. (hereinafter "Pl. Resp.") ¶ 17.) Wright also gave ten of the invitations to two of her co-workers when they were at her home. (Def. St. ¶ 18.)

Wright gave deposition testimony on July 28, 2008 in response to a subpoena in a previous lawsuit filed by another employee against Group O's predecessor company, R & O. (Def. St. ¶¶ 24-25.) In that case, the plaintiff claimed she had been sexually harassed by a supervisor while working for R & O. (Pl. Rule 56.1(b)(3)(C) Statement of Add'l Facts (hereinafter "Pl. St.") ¶ 2.) Wright testified in her deposition that the plaintiff had complained to her employer about the harassment, (Pl. St. ¶ 5),[1] but that the supervisor was not disciplined. (Pl. Resp. ¶ 33.) She also testified that she was harassed by the same supervisor, that she immediately reported the conduct to management, and that R & O immediately terminated the supervisor. (Def. St. ¶ 26.) The parties dispute whether Wright notified David Fillmore, the person who eventually decided to terminate her, that she was going to miss work in order to testify in that case. (Pl. Resp. ¶ 37; Def. Resp. ¶ 8.) Wright testified in her deposition for this case that she did notify Fillmore. (Pl. St. ¶ 8.) Fillmore testified that he did not learn of Wright's deposition until long after she was terminated. (Def. St. ¶ 38.)

Fillmore claims that he fired Wright because her supervisor, Souza, brought him a copy of Wright's birthday party invitations and said that they were on Caterpillar's property and he thought they violated company policies about posting or distributing obscene or offensive

---

[1] Defendant argues that this fact should be stricken from the record because it contains hearsay. (Def. Resp. to Pl. St. (hereinafter "Def. Resp.") ¶ 5.) Though Defendant does not articulate the basis for its objection, it is apparently objecting to Wright's testimony about the other employee's statements to her supervisor. Those statements are clearly not hearsay in this context, however, because they are not offered for the truth of the matter asserted. *See* Fed. R. Evid. 801(c). What matters here is not what the other employee said, or whether it was true, but what Wright said during her deposition and what impact it might have had on her employment. Thus, because Defendant does not deny that Wright made these statements, the Court accepts this fact as undisputed.

2

materials. (Def. St. ¶¶ 40, 56-67.) The parties dispute when the meeting between Souza, Fillmore, and Wright regarding the invitation took place. They agree that Fillmore faxed a separation notice to Defendant's human resources department in order to document her termination at 11:29 a.m. on July 31, 2008. (Pl. St. ¶ 25.) However, Wright claims that Fillmore had Souza summon her to his office to discuss the invitation on the afternoon of July 31, 2008, and cites to Fillmore's testimony for support. (Pl. St. ¶¶ 18, 20-24.) Group O cites to another portion of Fillmore's testimony for support of its assertion that Fillmore does not remember the exact date of the meeting. (Def. Resp. ¶ 18.) Group O claims that the meeting must have taken place before July 31, 2008. (Def. Resp. ¶ 21.)

## II. Standard of review

Summary judgment is appropriate when the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating there is no genuine issue of material fact, and judgment as a matter of law should be granted in their favor. *Id.* Once the moving party has met the initial burden, the non-moving party must offer more than a mere scintilla of evidence to survive summary judgment. *Roger Whitmore's Auto. Servs. v. Lake County, Ill.*, 424 F.3d 659, 667 (7th Cir. 2005). The non-moving party must produce specific facts showing there is a genuine issue of material fact, and that the moving party is not entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Finally, all evidence and inferences must be viewed in the light most favorable to the non-moving party. *Id.* at 255.

## III. Analysis

A plaintiff in a Title VII action claiming retaliation for engaging in a protected activity can prove her claim by one of two methods, commonly referred to as the direct and indirect methods. *Poer v. Astrue*, 606 F.3d 433, 439 (7th Cir. 2010). In her response to Defendant's motion, Wright pursues only the direct method. Under the direct method, "a plaintiff must show through either direct or circumstantial evidence that (1) she engaged in statutorily protected activity; (2) she suffered an adverse action taken by the employer; and (3) there was a causal connection between the two." *Id.* (internal quotation omitted). Here, Group O makes much of the fact that, in its view, Wright's deposition testimony in the previous case was helpful to the company, rather than harmful. Not only is this debatable and disputed, but it also does not mean that Fillmore would have interpreted her participation in that case the same way, or that Wright was not engaging in protected conduct when she testified about sexual harassment by her supervisor. On the contrary, reports of sexual harassment are almost always the type of "opposition" to discrimination protected by Title VII. *See Crawford v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 129 S. Ct. 846, 851, 172 L. Ed. 2d 650 (2009); 42 U.S.C. § 2000e-3(a). Group O does not dispute that Wright suffered an adverse action as she was fired. Thus, the only remaining question is whether Wright can create a genuine dispute as to whether there was a causal connection between the two.

Group O argues that it is impossible for Wright to establish such a connection because Fillmore was unaware of her deposition testimony when he fired her. However, Wright testifies that she notified him that she was going to testify beforehand. This conflicting testimony creates a genuine dispute as the Court cannot make credibility determinations at this stage. Thus, the Court turns to Wright's evidence of causation.

Wright relies entirely on circumstantial evidence in making her case. The Seventh Circuit has identified three types of circumstantial evidence that are normally relied upon by plaintiffs in Title VII cases. First, a plaintiff may point to suspicious timing, behaviors, or statements from which a jury might draw an inference of discriminatory intent. *Troupe v. May Dept. Stores Co.*, 20 F.3d 734, 736 (7th Cir. 1994). Second, a plaintiff may point to evidence that similarly-situated employees who did not engage in protected activity received systematically better treatment than the plaintiff. *Id.* Finally, a plaintiff may point to evidence that the employer's stated reason for taking the adverse action in question was merely pretext for discrimination. *Id.*

Wright was terminated, at most, three days after her deposition testimony. This undoubtedly constitutes suspicious timing. However, Group O claims that Wright's case relies solely on the suspicious timing and that such evidence is not sufficient to survive summary judgment. Indeed, the Seventh Circuit has noted quite recently that "[s]uspicious timing may be just that – suspicious – and a suspicion is not enough to get past a motion for summary judgment." *Loudermilk v. Best Pallet Co., LLC*, --- F.3d ----, No. 10-1846, 2011 WL 563765, *2 (7th Cir. Feb. 18, 2011). The court continued, however, by noting that the "belief that timing *never* supports an inference of causation is untenable. The closer the two events are, the more likely that the first caused the second." *Id.* (emphasis in original). In other words, "[o]ccasionally...an adverse action comes so close on the heels of a protected act that an inference of causation is sensible." *Id.* The timing in *Loudermilk* was admittedly even more suspicious than here as the plaintiff's supervisor fired him on the spot when the plaintiff handed his supervisor a written complaint alleging discrimination. *Id.* at *1. Nonetheless, the timing in this case may be suspicious enough to allow the question to go to a jury.

5

However, the court need not make that determination because, contrary to Group O's claims, Wright relies on more than suspicious timing. She notes that Fillmore testified that he learned of Wright's invitations on July 31st and met with her the same day to discuss them. Group O contends that this is a mischaracterization of Fillmore's testimony, as he said that he did not remember exact dates. However, both descriptions are accurate in fact. At one point in his testimony Fillmore testified that he did not remember the exact date that he met with Wright. (Pl. St. Ex. I at 36:12-16.) However, after reviewing a couple documents regarding the meeting, Fillmore stated affirmatively that the meeting took place on July 31st. (Pl. St. Ex. I at 64:12-14.) In fact, at one point, his counsel objected to opposing counsel asking whether the documents refreshed Fillmore's recollection on the grounds that Fillmore had already stated that July 31st was the correct date. (Pl. St. Ex. I at 64:15-17.) He also testified that Souza brought him the invitation in the afternoon on the same day as the meeting, some time after Wright and Souza began their shift. Both Wright and Souza worked the second shift and began work in the afternoon. Yet, Fillmore faxed the separation notice recording Wright's termination to the human resources department at 11:29 a.m. on July 31st, the same day he claims he found out about the invitations.

Taking these facts in the light most favorable to the plaintiff, it appears that Fillmore had officially terminated Wright before he claims to have learned about her invitations. If that is true, then Fillmore's explanation for terminating Wright, which is based on his knowledge of the invitations, must be a lie. Group O suggests that this is a "contorted version of the facts" that requires the Court to infer that Fillmore is a liar simply "because of a time line on a FAX." Instead, according to Group O, "[t]he paperwork was undoubtedly processed on the morning of July 31, 2008 and the meeting with Felicia Wright must have occurred on July 30, 2008."

6

However, it would be improper for the Court to accept Group O's version of the facts. The Court would have to ignore its duty to take all facts in the light most favorable to the plaintiff and make all reasonable inferences in her favor, and instead assume that Fillmore was mistaken when he testified that he met with Wright on July 31st because it does not fit with his or Group O's story. Fillmore may have been mistaken, but it is not the Court's role to make that decision.

In short, Wright has provided sufficient evidence that Fillmore is lying about why he fired her. This evidence of pretext, when combined with the suspicious timing of his decision, is enough to raise a question of fact as to whether Group O retaliated against Wright for engaging in protected activity.

## CONCLUSION

For the above reasons, the Court DENIES Defendant's motion for summary judgment.

IT IS SO ORDERED.

_3/23/11_
Dated

Hon. William J. Hibbler
United States District Court

7